DAVID J. SUTHERLAND v. FEDERAL INSURANCE COMPANY.

[52 South. 689.]

1. INSURANCE. *Fire policy. Vacancy permit. Agent's agreement to renew.*

An agreement by the agent of a fire insurance company who issued the policy to renew a vacancy permit binds the company, and, it not having been renewed, where loss occurred during the time for which it was to have been renewed and while the house was still vacant, recovery may be had on the policy.

2. SAME. *Agents. Terminating agency. Knowledge of insured. Constructive notice.*

The agent of a fire insurance company, by whom its policy was issued, remains the agent of the company, with power to bind it as to a vacancy permit, until the revocation of the agency is actually known to the insured, and the acceptance by him from the agent of a permit, signed by another, does not charge him with notice.

FROM the circuit court of Forrest county.

HON. WILLIAM H. COOK, Judge.

Sutherland, appellant, was plaintiff in the court below; the insurance company, appellee, was defendant there. From a judgment in defendant's favor plaintiff appealed to the supreme court. The facts as stated by ANDERSON, J., were as follows:

"Appellant, Sutherland, through his agent, Epley, insured a dwelling owned by him in the Federal Insurance Company, the appellee, for $2,000, which was destroyed by fire, and Sutherland sued the insurance company for the amount of the policy. At the conclusion of the testimony the court instructed the jury peremptorily to return a verdict for the insurance company, which was done, and judgment entered accordingly, from which this appeal is prosecuted.

"The policy was issued February 13, 1907, for a term of three years. The fire occurred August 8, 1908. The policy contains the usual ten-day vacancy clause. At the time of the fire the dwelling had been vacant a little over thirty days. On July 6, 1908, McLeod & Gunter, the agents of the Federal Insurance Company, with whom the insurance was effected, gave a vacancy permit for thirty days, and agreed to renew every thirty days until notified to the contrary. The insurance company defends on the ground that the vacancy clause was violated; that McLeod & Gunter, at the time they gave the vacancy permit, and agreed to renew it every thirty days without further notice, were not, and had long since ceased to be, the agents of the company, and without power to make such indorsements. On the other hand, it is contended for Sutherland that they were the agents of the company, with power to bind their principal, so far as this policy was concerned, until he had actual notice from the company to the contrary, which he did not have. The controlling facts in the record touching this, the only question in the case, are as follows:

"At the time this insurance was effected, McLeod & Gunter were general fire insurance agents at Hattiesburg, and so continued up to the time of the fire. At the time this policy was issued they represented this company and others. On February 14, 1907, the Federal, for its own convenience, and without the knowledge or consent of Sutherland or his agent, Epley, who looked after his rents and insurance, reinsured this risk and others in the National, and immediately wrote their agents, McLeod & Gunter, at Hattiesburg, to that effect, using this language in the letter: 'You will therefore, on receipt of this letter, immediately cease acceptances of all new business or renewals on our behalf; but such policies as have already been issued, where the date of commencement is subsequent to the present date, may stand undisturbed, provided same cover risks, acceptable to us.

May I therefore ask you to kindly acknowledge receipt of this letter, and to return to us by early express your commission of authority and all unused policies on hand, in order to facilitate the closing of our agency affairs; also that you render your account current, with remittances to balance, promptly, in usual form. All losses occurring after noon February 14, 1910, should be reported to our reinsurer.' On April 29, 1907, they wrote McLeod & Gunter again as follows: 'We have forwarded to our reinsurer, the National Fire Insurance Company, of Hartford, Conn., all daily reports and reinsurance schedules of business written in the state of Mississippi, and would thank you in the future to refer direct to them all indorsements, cancellations, and losses.'

"Carroll & King, another insurance agency at Hattiesburg, represented the reinsurer, the National Insurance Company. On July 6, 1908, Epley, as agent for Sutherland, applied in the form of a letter to McLeod & Gunter, as the agents of the Federal Company, to correct the description of the property, which was discovered to be wrong, and for a vacancy permit for thirty days, to be renewed until further notified, of which letter the following is a copy: 'July 6, 1908. McLeod Insurance Agency, City—Gentlemen: I understand the insurance policy which we gave you for Mr. D. J. Sutherland on the two-story house reads, "Lot 6, Block 8," which should read, "Lot 7, Block 8." Kindly change the policy so that it will read "Lot 7, Block 8;" also send me slip for policy; also inclose vacancy permit for thirty days, and continue vacancy permit until we notify you, and, if you receive no notice at the end of thirty days, continue permit.' After writing this letter Epley saw McLeod, of McLeod & Gunter, who acknowledged its receipt, and stated that the indorsements he asked would be made, including the vacancy permit for thirty days, to be renewed from time to time as it expired, until further notice from Epley. A short

time before the fire McLeod delivered to Epley a vacancy permit
for thirty days, which was executed by Carroll & King, agents
of the reinsurer, the National, as follows: 'Indorsement—D. J.
Sutherland.    Permission is hereby granted for premises to re-
main vacant for a period of thirty (30) days from date of this
indorsement.    Attached    to    and    forming    part    of    policy
No. 162699 of the Federal Insurance Co.    The Federal Insur-
ance Co., by the National Fire Ins. Co., Reinsurers, Carroll
& King, Agents, per M. D. King.    July 7, 1908.'

"There is nothing to show that the agent, Epley, read this
indorsement, and Sutherland never saw it until after the fire,
and neither of them knew anything about the reinsurance, that
Carroll & King were the agents of the National, and that Mc-
Leod & Gunter were no longer the agents of the Federal.    On
the contrary, the latter, from the time the policy was issued, up
to and after the fire, continued to hold themselves out as the
agents of the Federal.    After the 14th of February, 1907, they
gave Sutherland a rebate on his policy, paying him the differ-
ence, some fifty odd dollars.    Thirty or forty days before the
fire, McLeod approached Sutherland to renew his policy, think-
ing it was for only a term of one year, and ascertained it was
a three-year policy; and after the fire McLeod & Gunter, repre-
senting the Federal Company, undertook to have the loss ad-
justed, from time to time reporting progress.    In fact, neither
Sutherland nor his agent, Epley, knew any one else in the
transaction except McLeod & Gunter, who held themselves out
all the time as agents of this company."

*Harris & Potter, John C. Street* and *R. S. Hall,* for appel-
lant.

On Feb. 14, 1907, the appellee wrote McLeod & Gunter, say-
ing, "You will therefore on receipt of this letter immediately
cease acceptances of all new business or renewals on our behalf,

but such policies as have already been issued where the date of commencement is subsequent to the present date may stand undisturbed, provided same cover risks acceptable to us. May I therefore ask you to kindly acknowledge receipt of this letter and to return to us by early express your commission of authority and all unused policies on hand, in order to facilitate the closing of our agency affairs; also that you render your account current with remittances to balance promptly, in usual form. All losses occurring after noon February 14th, 1910, should be reported to our reinsurer."

On April 29, 1907, the Federal wrote them again as follows: "We have forwarded our reinsurers, the National Fire Insurance Company, of Hartford, Conn., all daily reports and reinsurance schedule of business written in the state of Mississippi and would thank you in the future to direct to them all indorsements, cancellations and losses."

But the termination of an insurance agent's authority to represent the company does not make his acts void, as to policies previously issued by him until notice of the revocation of his authority is made to the insured. *Burlington Ins. Co. v. Threekeed,* 60 Ark. 539; *Merchants' Ins. Co. v. Oberman,* 99 Ill. App. 351; *In re Pelican Ins. Co.,* 47 La. Ann. 935; *Wilson v. Commercial Ins. Co.,* 51 S. C. 540; *Continental Ins. Co. v. Brooks,* 131 Ala. 614; *Western Ins. Co. v. Rust,* 141 Ill. 85.

As a general rule a revocation of authority does not become effective as between the principal and third person subsequently dealing with the agent as such until they receive notice thereof.

By conferring the authority the principal gives the third persons who are aware of it the right to deal with the agent according to its terms on the principal's account; and they have a right to assume until they are otherwise informed that the authority continues as it was originally conferred. Accordingly, in the absence of notice of revocation, third persons subsequently

·dealing with the agent may hold the principal responsible for acts done by the agent within the scope of his previous authority. 31 Cyc. 1305 and authorities under note 48. ·

If the appellee had desired to have this agency terminated, nothing was easier than to·have notified its patrons of the fact.

*McLaurin, Armistead & Brien,* for appellee.

The authorities are plentiful that the Federal Insurance Company had a right to terminate the agency. See 3 Cooley's Briefs on Insurance, 2539, where we find the following text:

"It is obvious that an insurance company will not be charged with a notice of facts affecting an insurance, which is given to a person who has ceased to represent the company, though the policy was in fact procured through the agency of such person. An insured must see to it that the person to whom a notice is .given is at the time authorized to act for the insurer." *Smith v. Continental Ins. Co.,* 6 Dak. 433, 43 N. W. 810; *Greenwich Fire Ins. Co. v. Sabotnick,* 91 Ga. 717, 17 S. E. 1026.

We may concede that as McLeod had authority to waive the conditions in the policy in reference to vacancy permits not by the provisions of the contract but by construction, the exercise of such power on his part, after a revocation of his agency, would have bound the Federal Insurance Company; provided the ·assured, Sutherland, or his agent, had no notice of the revocation. The real question in the case then is: Whether or not Sutherland or his duly constituted agent, Epley, had notice of the revocation of McLeod's agency. The case having been rested on the evidence of the plaintiff insofar as this question is concerned, the statements of Sutherland and Epley must stand that McLeod never gave them any actual notice of the revocation of his agency. The question then is limited to whether or not Sutherland or Epley had constructive notice or such notice as would, if it had been followed to a definite conclusion in good

faith, have led to actual information in the premises. There is no lack of authority in this state, and in the law books, generally, in reference to this question.

First: Let the court bear in mind the fact that there had been two endorsements on the policy herein sued on, both of which show that the National Fire Insurance Company had reinsured the Federal Insurance Company and made the endorsements asked for and they were signed by Collins & King, Agents of the National Fire Insurance Company. Both these endorsements were before the fire and were in the possession of Sutherland or his agent at the time of the fire and had been for a long time prior thereto. Let the court also bear in mind that Sutherland testifies herein that he examined the policy some thirty or forty days before the fire. In the case of *Parker v. Foy,* 43 Miss. 260, the following announcement of law in this state is made:

"Whatever is enough to excite attention, or put a party on inquiry, is notice of everything, to which such attention or inquiry might reasonably lead. Sufficient information to lead to the knowledge of a fact shall be sufficient to charge him with the knowledge of that fact."

Can it be denied that the notice in question was sufficient information to convey knowledge of the fact that the Federal Insurance Company had reinsured in the National and can it be denied that if with this knowledge in the mind of Sutherland or his agent, he had inquired of Collins & King, who were at all times within reach as to what such an endorsement meant on the Federal policy, it would have led to knowledge of the fact that McLeod was no longer agent of the Federal Insurance Company, or in other words, that the Federal Insurance Company had retired from the state and that the Insurance carried by Sutherland was really at that time in the National Fire Insurance Company and that it, the National Fire Insurance Company, was the company really liable under the contract?

Argued orally by *Wiley H. Potter,* for appellant, and by *R. L. McLaurin,* for appellee.

ANDERSON, J., after stating the facts as above, delivered the opinion of the court.

If McLeod & Gunter continued as the agents of the Federal Insurance Company up to the time of the fire, so far as the policy in question is concerned, their agreement to renew the vacancy permit was binding on the company, and the case stands as if renewed and in force when the fire occurred. "An insurance agent, clothed with authority to make contracts of insurance, or to issue policies, stands in the stead of the company to the assured. His acts and declarations in reference to such business are the acts and declarations of the company. The company is bound, not only by notice to such agent, but by anything said or done by him in relation to the contract or risk, either before or after the contract is made." *Rivara v. Insurance Co.,* 62 Miss. 720; *Fire Insurance Co. v. Stein,* 88 Miss. 499, 41 South. 66.

Were McLeod & Gunter agents, as to this policy? On this subject we adopt the rule laid down by the South Carolina court in *Wilson v. Commercial Union Insurance Co.,* 51 S. C. 540, 29 S. E. 245, 64 Am. St. Rep. 700, in this language: "When the plaintiff proved, and the defendant admitted, that Jerome P. Chase & Sons were the agents of defendant, and as such dealt with the plaintiff in relation to the issuing of the policy, there was clearly established an agency by said firm with the defendant. Now, when did that agency cease, so far as the plaintiff was concerned? Was it in the power of the defendant to quietly and secretly withdraw its agency from Chase & Sons, so as to prejudice the rights of third parties to whom this revocation of agency was utterly unknown and, especially when the members of this firm of Chase & Sons still acted to the

agent of plaintiff as if they were still clothed with this agency? We do not think so." See 22 Cyc. 1428, 1429, and notes.

It is contended that the vacancy permit issued by Carroll & King, agents of the National Insurance Company, at the instance of McLeod & Gunter, and by the latter handed to Epley, the agent of Sutherland, a short time before the fire, was sufficient of itself to lead Epley to knowledge of the fact that McLeod & Gunter were no longer the agents of the Federal. We hold that it was not. It was not intended as such, but for an entirely different purpose. It was necessary, in order for the company to terminate the agency of McLeod & Gunter as to this policy, to give either Sutherland or his agent, Epley, actual notice to this effect; constructive notice being insufficient.

A peremptory instruction, if asked, should have been given for the appellant.

*Reversed and remanded.*