## St. Paul Fire & Marine Ins. Co. *v.* Loving.

(Division B.   April 11, 1932.)

[140 So. 727.   No. 29920.]

T. J. Wills, of Hattiesburg, for appellant.

R. A. Wallace, of Gulfport, for appellee.

**Anderson, J.,** delivered the opinion of the court.

Appellant insured appellee's De Soto eight-cylinder automobile in the sum of one thousand, one hundred fifty dollars against loss by theft or fire. The policy of insurance contained the representation that appellee had purchased the car for one thousand, one hundred fifty dollars new in December, 1930. There was also a stipulation in the policy by the terms of which appellee warranted the truth of that statement, and a provision that if the statement was not true the policy should be void. Appellee's car was stolen and destroyed by fire. She made claim to appellant for the loss. Appellant refused payment upon the ground that appellee had purchased the car secondhand and not new, and therefore under the

policy there was no liability. Appellee thereupon filed her bill seeking to reform the policy and recover the loss upon the ground of mutual mistake between the parties in that when the car was insured it was not represented by appellee and understood by appellant, that she had bought it new, as set forth in the policy. Appellant answered the bill denying its material allegations. There was a hearing on bill, answer, and proofs resulting in a decree reforming the policy as prayed for in appellee's bill, and awarding her the sum of one thousand, one hundred fifty dollars, the value of the car. From that decree appellant prosecutes this appeal.

There was no real conflict in the evidence, which was substantially as follows: On the 16th day of December, 1930, appellee purchased from her brother-in-law, A. G. Woodcock, the car,—a De Soto straight eight, four-door sedan, model 1930, motor No. 13079, serial No. L-115 HD —for which she paid him the sum of one thousand, one hundred fifty dollars. Woodcock had purchased the car new about two and a half months prior to the time he sold it to appellee, paying therefor the sum of one thousand, two hundred fifty dollars. The car had been run about three thousand miles when purchased by appellee. One thousand, two hundred fifty dollars was the cash selling price of the car new at Gulfport. When the appellee bought the car it appeared to be new and was in excellent condition and had a cash value of one thousand, one hundred fifty dollars. Four days after appellee bought the car she requested Mr. Palmer of the Palmer Insurance Agency of Gulfport, the agent of appellant, to insure it against loss by theft and fire. In obedience to that request Palmer went to the home of appellee to examine the car. There he found it parked in front of her residence. Appellee had never owned an automobile before and so informed Palmer. Palmer asked her when she purchased the automobile and what

she paid for it, and whether there was any balance due on the purchase money. Appellee answered these questions truthfully. She told him that she had bought it on the sixteenth day of December, 1930, for one thousand one hundred fifty dollars, and had paid in cash the entire purchase price. Thereupon Palmer proceeded to make an independent investigation of the car. He took its make, model, motor number, and serial number. Palmer did not ask appellee whether she had bought the car new, but asked her when she bought it. After examining the car Palmer returned to his office, prepared the policy of insurance, countersigned it as the agent of the appellant, and mailed it to the appellee and collected the premium from her.

Appellee did not read the policy until after she had received notice from appellant denying liability upon the ground above stated. In addition to the statement in the policy that the appellee had bought the car new, there was also the statement that it was a 1931 model, when in fact it was a 1930 model. The policy also contained an error in the spelling of appellee's name.

The chancellor found as a fact from the evidence that appellee did not represent to appellant that she had bought the car new. We think that finding of fact by the chancellor was amply justified by the evidence, as was also his finding that the representation in the policy that appellee had bought the car new was by misunderstanding and fault of the appellant inserted therein.

Section 5196 of the Code of 1930, provides as follows: "Every person who solicits insurance on behalf of any insurance company, or who takes or transmits, other than for himself, an application for insurance, or a policy of insurance, or who advertises or otherwise gives notice that he will receive or transmit the same, or who shall receive or deliver a policy of insurance of any such company, or who shall examine or inspect any risk, or receive, collect or transmit any premium of insurance, or

make or forward a diagram of any building, or do or perform any other act or thing in the making or consummation of any contract of insurance, for or with any such insurance company, other than for himself, or who shall examine into or adjust or aid in adjusting any loss for or on behalf of any such insurance company, whether any of such acts shall be done at the instance, or request, or by the employment of the insurance company, or of, or by any broker or other person, shall be held to be the agent of the company for which the act is done or the risk is taken as to all the duties and liabilities imposed by law, whatever conditions or stipulations may be contained in the policy or contract; such person knowingly procuring by fraudulent representations, payment, or the obligation for the payment, of a premium of insurance, shall be punished by a fine of not less than one hundred dollars nor more than five hundred dollars, or be imprisoned for not more than one year.''

It will be observed that the statute provides, among other things, that if any insurance agent shall receive or deliver a policy of insurance for his principal, or shall examine or inspect any risk, or receive, collect, or transmit any premium of insurance, he shall be held to be the agent of his principal ''for which the act is done or the risk is taken as to all the duties and liabilities imposed by law, whatever conditions or stipulations may be contained in the policy or contract.'' Where an agent of an insurance company inspects a risk, issues and delivers the policy of insurance for his principal and collects the premium due upon the policy, he is the general agent of the company, and his knowledge is the knowledge of his principal. In other words, what he does his principal does. Big Creek Drug Co. v. Stuyvesant Ins. Co., 115 Miss. 333, 75 So. 768; Agricultural Ins. Co. v. Anderson, 120 Miss. 278, 82 So. 146; Lamar Life Ins. Co. v. Kemp, 154 Miss. 890, 124 So. 62; Hartford Fire Ins.

Co. v. Clark, 154 Miss. 418, 122 So. 551; Interstate Life & Accident Ins. Co. v. Ruble, 160 Miss. 206, 133 So. 223.

Where such an agent of an insurance company makes an independent investigation of his own as to the description, character, and condition of the property to be insured, and in the issuance of the policy of insurance for his principal erroneously described the property, a court of equity will reform the policy so as to make it recite the true description, character, and condition of the property in order to effectuate the intention of the insurer and the insured. Big Creek Drug Co. v. Stuyvesant Ins. Co., supra; Agricultural Ins. Co. v. Anderson, supra; Hartford Fire Ins. Co. v. Clark, supra; and McAllister v. Richardson, 103 Miss. 418, 60 So. 570.

The authorities relied on by appellant are not in point. They are not cases where the insured sought to reform the policy of insurance because of mutual error and mistake between the parties in writing the policy.

Affirmed.