LEE, P. J.,
for the Court.
PROCEDURAL HISTORY
¶ 1. On June 12, 2000, Fred Smith filed suit against Medical Life Insurance Company (MLIC), Lynn Klimek, Ruth Grays-Washington [1] , and Tanja Grainger alleging gross negligence, fraudulent inducement, misrepresentation, breach of contract, fraud, bad faith post-claim underwriting, bad faith refusal to promptly and adequately investigate a claim, and bad faith denial of a life insurance claim. Washington and Grainger filed an answer on June 30, 2000, and an amended answer on July 10, 2000. MLIC filed its answer and affirmative defenses on August 8, 2000. Kli-mek filed her answer and affirmative defenses on August 30, 2000.
¶ 2. MLIC and Klimek filed a motion for summary judgment on December 31, 2002. Smith then filed his response to the motion for summary judgment, as well as a cross-motion for partial summary judgment as to liability on the contract claims and a motion to strike certain exhibits attached to MLIC and Klimek’s summary judgment motion. At some point during this time, Washington and Grainger filed a motion to dismiss or, in the alternative, for summary judgment. On April 1, 2003, the Washington County Circuit Court granted MLIC and Klimek’s motion for summary judgment and granted Washington and Grainger’s motion to dismiss. Smith’s motion to strike certain exhibits was also denied. Smith now appeals to this Court asserting that the trial court erred in granting summary judgment when a genuine issue of material fact existed regarding the processing of the insurance application and the evaluation and handling of the claim. Finding no error, we affirm.
FACTS
¶ 3. Smith and his wife, Marcella Smith, were employed by the Mississippi Department of Corrections (MDOC) and worked at the Mississippi State Penitentiary in Parchman. Smith served as a Correctional Supervisor and Marcella worked as a Correctional Officer. In a memorandum dated September 8,1998, James Anderson, Commissioner for MDOC, announced that MLIC was making a group life insurance program available to MDOC employees. Under the terms of the offer, MLIC would waive individual underwriting if there was 15% employee participation in the plan. On October 23, 1998, Smith applied for life insurance coverage for himself, and Marcella signed the spouse coverage request. *50 In filling out the application’s medical history section, Marcella noted a preexisting condition of a heart murmur.
¶ 4. After the open enrollment period for those MDOC employees wishing to apply ended on December 1, 1998, the number of participating MDOC employees had not reached the 15% group participation requirement. As a result, each individual applicant had to be individually approved by MLIC under its existing risk underwriting standards. In fact only 210 out of the 2,500 total employees, less than 8.5%, participated in the program.
¶ 5. Smith and Marcella’s application was received at MLIC’s office in Cleveland, Ohio, on December 18, 1998. Smith, along with other individual MDOC employees whose applications did not reveal a preexisting medical condition, was approved with an effective date of December 27, 1998. However, there was a notation on Smith’s application stating “spouse pending,” indicating that Marcella had not been approved at that time. MDOC was notified on December 30, 1998 that further investigation was needed on Marcella’s application. MLIC requested Marcella’s medical records around January 4, 1999, and received the records on February 4, 1999. A review of the records indicated that Marcella also suffered from preexisting congestive heart failure, surgery for heart valve replacement, and mixed mitral valve disease, all of which disqualified her from coverage. On February 12, 1999, a notice of rejection of coverage for Marcella was received by Smith. Sadly, Marcella died on February 8,1999.
¶ 6. Smith contacted Washington on February 11, 1999, and informed her of Marcella’s death. Washington is employed by MDOC as a Personnel Director at Parchman. Washington informed Smith that no information had been received from MLIC denying Marcella’s application for life insurance benefits. Washington transferred Smith to Karen Ware in the payroll department who then informed Smith that the amount of the insurance premiums had been withheld from Smith’s payroll check for three months pending coverage of Marcella. Washington and Grainger, a Personnel Officer, asked Smith to sign an MDOC form requesting the cancellation of insurance products effective January 1,1999. The purpose of this form was for the amount of money withheld from Smith’s paycheck for the insurance premiums to be returned to him. On April 16, 1999, Smith received a check in the amount of $51, fully reimbursing him for all deductions made from his paycheck for premiums paid pending Marcella’s coverage.
DISCUSSION
I. DID THE TRIAL COURT ERR IN GRANTING SUMMARY JUDGMENT IN FAVOR OF THE APPELLEES?
¶ 7. In his only issue, Smith argues that the trial court erred in granting summary judgment in favor of the appellees. In reviewing a grant of summary judgment, this Court employs a de novo standard. If the pleadings, depositions, answers to interrogatories and admissions, together with any affidavits, show there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law and summary judgment should be entered for the movant. Boyles v. Schlumberger Technology Corp., 832 So.2d 503(¶ 5) (Miss.2002).
¶ 8. Smith contends that genuine issues of fact exist as to whether the MDOC December 1, 1998, application for insurance was a contract for insurance, whether MLIC waived its authority to rescind and deny coverage to Marcella, and whether MLIC properly investigated Smith’s claim.
*51 ¶ 9. Insurance policies are contracts and thus are governed by contract principles. See Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984 (5th Cir.2001). An enforceable insurance contract must contain the elements of offer, acceptance, and consideration. Infinity Ins. Co. v. Patel, 737 So.2d 366(¶ 5) (Miss.Ct.App.1998). Furthermore, an application for insurance is simply an offer to contract. Interstate Life and Accident Ins. Co. v. Flanagan, 284 So.2d 33, 36 (Miss.1973); see also Goel, 274 F.3d at 992. In light of the foregoing statements, Smith’s arguments that MDOC made an offer to MLIC to accept an insurance policy and MLIC accepted the offer when it executed the application are without merit. Marcella’s application was not a contract and MLIC was under no duty to accept Marcella’s application unless it met certain prerequisites set forth by MLIC, namely that Marcella pass general underwriting requirements to which the entire group was subject. Although Smith’s application was accepted, he was notified that Marcella’s application was still pending. Furthermore, Smith has failed to offer any proof beyond his assertions as to the existence of a contract between Marcella and MLIC. As Marcella’s offer was never accepted, we fail to find that a contract existed wherein Marcella would have been provided with life insurance.
¶ 10. Smith also argues that the retention of Marcella’s premiums by MLIC constituted waiver of its denial of coverage. However, MDOC, not MLIC, collected the premiums while Marcella’s application for coverage was pending. Once Marcella was denied coverage, MDOC refunded to Smith the payment of those premiums in the amount of $51. Furthermore, the cases cited by Smith are clearly distinguishable from the case sub judice as they involved valid insurance contracts, not instances where coverage was denied or pending a review of medical records. See Minnesota Mut. Life Ins. Co. v. Larr, 567 So.2d 239 (Miss.1990); Home Ins. Co. v. Thunderbird, Inc., 338 So.2d 391 (Miss.1976).
¶ 11. In considering Smith’s argument that MLIC never properly investigated Smith’s claim, we fail to see how MLIC and Klimek can be held liable for failure to investigate a claim when there was no contractual obligation between the insurance company and Marcella. Actually, Smith’s concern is the length of time it took MLIC to deny Marcella’s application for coverage. However, Smith fails to produce any evidence beyond his mere assertions that MLIC is somehow liable for the length of time between Marcella’s application and MLIC’s denial of coverage.
¶ 12. Smith likewise suggests that MDOC, Washington, and Grainger were acting as statutory agents of MLIC pursuant to Mississippi Code Annotated Section 83-17-1 (1972)[2]. However, the trial court granted Washington and Grainger’s motion to dismiss on the grounds that they were State employees acting in the scope of their employment pursuant to Mississippi Code Annotated Section 11-46-9 (Rev. 2002). According to 11-46-9 “(1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim: ... (d) [b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the governmental entity or employee thereof, whether or not the *52 discretion be abused.In his pleadings, Smith admits that Washington and Grainger neither accepted his life insurance application nor deducted the premiums from his paycheck. Smith does state that Washington and Grainger, prior to Marcella’s death, posted flyers to inform the employees of the availability of insurance offered by MLIC. The only other contact Smith had with Washington and Grainger was after Marcella’s death when he was instructed to cancel his insurance products. Washington and Grainger were both employees acting within the course and scope of their employment at the time; therefore, sovereign immunity applies and they cannot be held liable. Finding thus, we decline to address Smith’s statutory agent claims.
¶ 13. As Smith has failed to point to any genuine issue of material fact beyond his mere assertions, we cannot find that the trial court erred in granting summary judgment in favor of MLIC and Klimek and in dismissing Smith’s claim against Washington and Grainger.
¶ 14. THE JUDGMENT OF THE WASHINGTON COUNTY CIRCUIT COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES, P.J., MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. IRVING, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.

. We note that in the record Ruth Grays-Washington is at times referred to as Ruth Graves-Washington.

. Miss.Code Ann. § 83-17-1 (1972) was amended effective January 1, 2002. The statute referred to by Smith is the version of the statute which was effective at the time Smith's complaint was filed.